IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO.   3:21-cr-32 |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S BRIEF IN SUPPORT OF |
| vs. | ) | MOTION TO SUPPRESS EVIDENCE |
| | ) | AND REQUEST FOR EVIDENTIARY |
| MATTHEW PATRICK LANGENBERG, | ) | HEARING |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..............................................................................................................1

II.    **THE SEARCHES OF MR. LANGENBERG'S CELL PHONE WERE
        ILLEGAL**………………………………………………………………………...2

III.    **THE SEARCH OF MR. LANGENBERG'S RESIDENCE WAS ILLEGAL**..............5

IV.    **CONCLUSION** .................................................................................................................7

I.    **INTRODUCTION**

On August 14, 2020, Officer Roehler of the Coralville Police Department met with Scott

Storck regarding a claim of work place harassment against Matthew Langenberg.   Mr. Storck

was one of Mr. Langenberg's supervisors.   During this conversation, Mr. Storck told the police

that he took Mr. Langenberg's cell phone from Mr. Langenberg around 10:00 a.m. that morning.

Mr. Storck further indicated that around 1:00 p.m. that day he located deleted files that he

believed to be child pornography on the cell phone.   Mr. Storck then provided the cell phone to

law enforcement.   Mr. Langenberg was terminated from his employment on that same date,

August 14, 2020.   On August 17, 2020, Officer Nicholson examined the cell phone and

allegedly also saw nude pictures of minors.

On August 20, 2020, Mr. Langenberg, through counsel, demanded that the employer

return his cell phone to him.   This was Mr. Langenberg's only phone, and he was free to use the

cell phone for both work and personal reasons.   The number for the cell phone had belonged to

Mr. Langenberg for many years.   His employer knew that it was his only phone, and that he

used the phone for personal reasons.   Mr. Langenberg's demand for the phone to be returned

was ignored.

On September 10, 2020, Detective Lord completed a forensic analysis on Mr.

Langenberg's cell phone even though a search warrant was never sought or obtained.   It is

alleged that during this forensic analysis, Officer Lord discovered images of child pornography.

Mr. Langenberg has now been charged with receipt and possession of child pornography.   He is

moving to suppress the results of the search of his cell phone.   Mr. Langenberg is also moving

to suppress a search of his residence which was done pursuant to a search warrant on September

30, 2020.

## II.     THE SEARCHES OF MR. LANGENBERG'S CELL PHONE WERE ILLEGAL.

A.     A search warrant was required prior to searching Mr. Langenberg's cell phone.

The Fourth Amendment protects "the right of the people to be secure in their persons,

houses, papers, and effects against unreasonable searches and seizures," and it requires a

showing of probable cause, supported by oath or affirmation, before a search warrant may be

issues.   Law enforcement generally must obtain a search warrant before searching the contents

of a cell phone.   *Riley v. California*, 573 U.S. 3731 (2014).

In *Riley*, the Supreme Court noted that, "[m]odern cell phones are not just another technological convenience.   With all they contain and all they may reveal, they hold for many Americans "the privacies of life."'   *Id.* at 402.   The court further stated that "[w]here a search is undertaken by law enforcement officials to discover criminal wrong doing,…reasonableness generally requires the obtaining of a judicial warrant.   *Id.* At 382.   A search occurs "[w[hen the government obtains information by physically intruding into a constitutionally protected area." *Florida v. Jardines*, 569 U.S. 1, 5 (2013).   In the present case, it is undisputed that at the time of the search of the cell phone, law enforcement had not obtained a search warrant.   It is also clear that Mr. Langenberg used the cell phone for personal as well as employment reasons, and that his employer knew that it was Mr. Langenberg's only phone.   Law enforcement does not appear to have taken any investigation to determine the owner of the cell phone.   Rather, they simply relied on the word of Mr. Storck.   Under the circumstances, the search of the cell phone without a search warrant was illegal.

B.    The search in this case was not a valid private party search.

A warrantless search is presumptively unreasonable absent some exception to the warrant requirement.   *United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004).   The Fourth Amendment does not apply to a search or seizure undertaken by a private party acting on his own initiative, but it does protect against such a search if the private party acted as an instrument or agent of the government.   *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (citation omitted).   In making this determination, the Eighth Circuit has focused on three factors:

(1) whether the government had knowledge of and acquiesced in the intrusive conduct;

(2) whether the citizen intended to assist law enforcement or instead acted to further his

own purposes; and

(3) whether the citizen acted at the government's request.  *Id.*

A defendant bears the burden of proving by a preponderance of the evidence that a

private party acted as a government agent.  *Ringland*, 966 F.3d at 735.   If a private party

conducted an initial search independent of any agency relationship with the government, then

law enforcement officers may, in turn, perform the same search as the private party without

violating the Fourth Amendment as long as the search does not "exceed the scope of the private

search."  *Id*. at 763, citing *United States v. Miller*, 152 F.3d 813, 815 (1998).

In the present case, as was stated above, Mr. Langenberg's cell phone was seized by Mr.

Storck, searched by Mr Storck, and provided to law enforcement all on the same day, August 14,

2020.   It is clear from these undisputed facts that Mr. Storck intended to assist law enforcement.

It is unknown at this time whether the government had knowledge of or acquiesced in the search

or whether Mr. Storck acted at the government's request.   These are factors that can be

addressed at an evidentiary hearing on this motion to suppress.

Either way, it is clear that Detective Lord's warrantless search exceeded the scope of Mr.

Storck's search.   According to Officer Roehler, who received the phone from Mr. Storck, Mr.

Storck advised him that he took the phone from Mr. Langenberg.   Mr. Storck indicated that he

then charged the phone and looked through the deleted file section to investigate the harassment

investigation.   Mr. Storck told Officer Roehler that he located deleted files of what he believed

to be child pornography.   Officer Nicholson also searched the phone and allegedly discovered

illegal images in the photo albums.

Detective Lord indicated that he received the cell phone on August 17, 2020. He conducted a much more extensive search of the phone than had previously been done. According to his report, Detective Lord began by photographing the phone's exterior and then connecting the phone to a Graykey to complete a paired extraction of the data from the phone. He then "examined the extracted data from the phone using Magnet Axion 4.5.0.21589." He also stated that "Project VIC hash sets current to August 7, 2020, were utilized to denote notable files, while NSRL (National Software Reference Library) ios 2.69 hash sets were used to eliminate known files of no interest." He allegedly discovered images within several different directories and also did an examination of the browser history. Detective Lord informed Officer Nicholson on September 10, 2020, that he had completed his forensic evaluation of the phone.

Clearly, Detective Lord's forensic examination of the phone was much more intrusive than that which had been done by Mr. Storck. Detective Lord did a full forensic evaluation of the phone while Mr. Storck appeared to have performed a viewing which lasted at most several hours. Under these circumstances, the forensic examination which was performed by Detective Lord clearly exceeded the scope of the earlier search by Mr. Storck, and the results of Detective Lord's examination should therefore be suppressed.

III.    **THE SEARCH OF MR. LANGENBERG'S RESIDENCE WAS ILLEGAL**.

As a generally accepted principle, the exclusionary rule prohibits the admission of evidence unlawfully obtained pursuant to an unreasonable search or seizure. *Weeks v. United States*, 232 U.S. 383, 398 (1914). Likewise, derivative evidence obtained directly or indirectly from an unlawful search is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 484-485 (1963). The exclusionary rule is "principally designed to deter violations of the Fourth

Amendment." *Murray v. United States*, 487 U.S. 533, 544 (1988) (Marshall's dissent). "By excluding evidence discovered in violation of the Fourth Amendment, the rule "compels respect for the constitutional guaranty in the only effectively available way, by removing the incentive to disregard it."" *Id*. (*quoting Elkins v. United States*, 364 U.S. 206, 217 (1960).

All evidence found as a result of the unlawful search is inadmissible, unless the government shows the evidence was secured "wholly independent" of the initial illegal search. *Murray*, 487 U.S. at 533-534, see also *Segura v. United States*, 468 U.S. 796, 804-805 (1984). The later seizure must be "genuinely independent" of the earlier unlawful search. *Murray* at 542. While the independent source doctrine recognizes that law enforcement is not to be placed in a worse position than they would have been in absent the Fourth Amendment violation, law enforcement is not to be put in a better position. *Id*. The government should not "profit" from the illegal activity. *Id*. Knowledge gained by a constitutional wrong cannot be used to secure additional evidence. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920).

Pursuant to the independent source doctrine, the government bears the burden of proving that the later warrant was based on wholly independent information. *Murray* at 542. To be wholly independent, the decision to seek the warrant must not have been affected by what was learned from the illegal conduct and likewise, the magistrate's decision must not have been affected by the evidence. *Id*., *see also United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005). Thus, in addition to demonstrating that the tainted evidence did not impact the magistrate's decision, the government must also show that the police would have sought the warrant absent the unlawful discovery of this evidence. *Leveringston* at 1115. A showing of independent probable cause alone is insufficient to support admissibility. *Id*. The government

should "present specific evidence that the officers were not prompted by allegedly unlawful activity to obtain the warrant, and should seek a finding on that point from the district court." *Id.*

In the instant case, the decision to seek a search warrant for Mr. Langenberg's residence is inextricably impacted by the tainted evidence described above.   The search warrant will be filed under seal as Defendant's Exhibit A.   The subsequent search warrant application included a presentation of the evidence that was discovered as a direct result of the Fourth Amendment violations described above.   The fact that the tainted evidence is contained within the application for search warrant is a critical consideration and distinguishes the case from other independent source cases.   See *Murray* 487 U.S. at 543, and *Segura* 468 U.S. at 814.   In *United States v. Madrid*, the Eighth Circuit Court of Appeals emphasized this distinction.   152 F.3d 1034, 1041 (8th Cir. 1998).   In the present case, the items seized during the search of the residence should be suppressed.

## IV.    CONCLUSION

WHEREFORE, the defendant, Matthew Patrick Langenberg, respectfully requests that all evidence seized from his cell phone and from his residence be suppressed.

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building

101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE:   (563) 322-8931
TELEFAX:   (563) 383-0052
EMAIL:   terry_mcatee@fd.org


By:   /s/ *Terence McAtee*
        **Terence McAtee**
        Assistant Federal Defender
        ATTORNEY FOR DEFENDANT


cc: Torrie Schneider, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on July 19, 2021, I electronically
filed this document with the Clerk of Court using the ECF
system which will serve it on the appropriate parties.
                    /s/